1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
2                       ATLANTA DIVISION


3

UNITED STATES OF AMERICA,       )
4          Plaintiff,           )
                                )
5    -vs-                       )  Indictment No.
                                )  1:12-CR-205-ODE
6                               )  Volume 6
WOODROW RUDOLPH DIXON (1)        )  Pages 713-742
7    and KIRK L. FLOYD (2),      )
          Defendants.           )
8

9

10

              Transcript of the Jury Trial Proceedings
11            Before the Honorable Orinda D. Evans,
              United States District Court Senior Judge
12                       November 25, 2013
                        Atlanta, Georgia
13


14

     APPEARANCES OF COUNSEL:
15
     On behalf of
16   the Government:                Mary L. Webb,
                                    Assistant United States Attorney
17
                                    William R. Toliver,
18                                  Assistant United States Attorney

19   On behalf of
     Defendant Dixon:               Stephen R. Scarborough, Esq.
20
     On behalf of
21   Defendant Floyd:               Akil K. Secret, Esq.

22


23   Amanda Lohnaas, RMR, CRR
     Official Court Reporter
24   United States District Court
     Atlanta, Georgia
25   (404) 215-1546

714

1                          INDEX

2    Verdict                                  734

3    Polling of the Jury                      736

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Monday, November 25, 2013, 10:00 a.m.; jury not

2     present.)

3          THE COURT:  Good morning, everybody.  How are you?

4          With respect to Count Four, as we were discussing on

5     Friday, I'm inclined just to tell the jury to mark through the

6     part of the special verdict form that asks the jury to find

7     Mr. Dixon guilty or not guilty on Count Four.

8          I do not believe I told the jury that that was

9     something that was permissible.  I don't think that was

10    included in my charge.  And in thinking about it over the

11    weekend, I just don't see how they could find Mr. Dixon guilty

12    of Count Four and I don't think there's any real debate about

13    it.

14         I had told you all on Friday that we would just wait

15    and see what the jury does and go from there but, honestly, I

16    don't want the jury to get hung up on this and I'm concerned

17    that they might.

18         So subject to whatever you all might have to say

19    about it, I am inclined to call the jury into the courtroom and

20    instruct them simply to mark through the part of Count Four --

21    the part of the special verdict form pertaining to Count Four,

22    more specifically Mr. Dixon's involvement in Count Four, just

23    mark through the whole thing and make no finding of guilty or

24    not guilty.  That will result in that count being dismissed

25    with prejudice as against Mr. Dixon.

1              Do you all have any comments?

2              MS. WEBB:  Your Honor, I understand what you're

3     saying and why you're saying it.  May I actually have a moment

4     to consult with Mr. Toliver about that?  He was on his way

5     here, I think he had to pick up his mother, just to -- I

6     believe I have to object to that but I would like to --

7              THE COURT:  Well, you're welcome to object to it, I

8     have no problem with that.  I think the jury is moving through

9     this indictment pretty fast and I don't want for them to get to

10    that part, so, frankly, I'm inclined just to move ahead.  Let

11    me hear what Mr. Scarborough has to say first.

12             MR. SCARBOROUGH:  Your Honor, that would address the

13    objection that we did have last week so I would concur with

14    that.

15             My only further comment would be that the question

16    itself is phrased as to whether Mr. Dixon was arrested for a

17    felony.  I think the fact is that there's an expunged matter in

18    Mr. Dixon's history that never went to a conviction.

19             THE COURT:  Now, looking at, Count Four is possession

20    of a firearm by convicted felon.

21             MR. SCARBOROUGH:  Right.

22             THE COURT:  Now, for starters, I don't remember there

23    being any evidence that Mr. Dixon has ever been convicted of a

24    felony.

25             MR. SCARBOROUGH:  In fact he has not and I would

1    normally not even consider that proper to raise but I

2    actually -- it actually is in evidence that he is not because I

3    think it was relevant to the entrapment defense that he was

4    not.

5              (Jury buzzer rings.)

6              THE COURT:  Would you see what they want?

7              MR. SCARBOROUGH:  So I guess I would request that the

8    Court go so far as to say that he has not been convicted of a

9    felony.

10             THE COURT:  I'm not addressing the note that they

11   sent, I'm not talking about that right now.  That's not what

12   brought this matter to my attention.

13             MR. SCARBOROUGH:  I see.  In that case, I would just

14   concur with Your Honor, I think that's appropriate to take it

15   away from their consideration.

16             THE COURT:  Now, regarding their note, I'm just

17   trying to think, I don't think there is any evidence of a

18   felony conviction.  And I'm referring to the note that we got

19   from the jury just a few minutes ago.

20             Normally I would just tell the jury to remember the

21   evidence when we get a note like this but I don't think --

22   well, let me do this -- we have a couple more notes.

23             MR. SECRET:  Your Honor, I would like to make a

24   comment if I could.

25             THE COURT:  All right, just a second.  One of these

1    notes says:  "We need true" -- t-r-u-e -- "explanation of

2    entrapment."

3           Another note:  "Can you explain one more time about

4    the conspiracy on guilty or not guilty on Count One?"

5           Mr. Secret, what were you going to say?

6           MR. SECRET:  Of course, Mr. Floyd is named in Count

7    Four.  My only concern would be when Your Honor gives a

8    specific instruction to the jury that they should strike

9    through and disregard Mr. Dixon as to that count, that that

10   does not imply to them anything with respect to Mr. Floyd.  And

11   that maybe they should be told so, that this does not in any

12   way reflect on your view of the evidence as it pertains to

13   Mr. Floyd.

14          THE COURT:  That seems fair enough.  I'm just trying

15   to think, the question about has Mr. Dixon been arrested for a

16   felony before this trial, I'm just trying to think if it could

17   have any application to any other count.

18          Maybe the thing to do is ask the jury if taking

19   Mr. Dixon out of Count Four resolves their question.  Maybe

20   that's the best way to do it.

21          And then:  "Can you explain one more time about the

22   conspiracy on guilt or not guilty on Count One?"

23          I guess the thing to do there is give the Hobbs Act

24   charge again.  And I will give the charge on entrapment again

25   in response to the other note.

1          These notes are all signed by different jurors.  I

2    think Mr. Hines -- well, I'm just going to let you look at the

3    notes.  Mr. Douglas wrote the one about explanation on

4    entrapment and it's possible it's Mr. Hines' signature about

5    explain again about the conspiracy on guilt or not guilty on

6    Count One.

7          Would you bring the jury in, please?

8          (Jury returned to the courtroom at 10:10 a.m.)

9          THE COURT:  Good morning, everybody.

10         THE JURORS:  Good morning.

11         THE COURT:  How are you?

12         A JUROR:  Good.

13         THE COURT:  Good, hope you had a good weekend.

14         There are a number of matters I would like to take up

15    with you all.

16         I want to start first with Count Four.  I have

17    something to tell you about Count Four.

18         You do have a special verdict form, as we discussed,

19    and when you look under the part that pertains to Count Four

20    you'll see there are paragraphs, paragraph 7 pertains to

21    Mr. Dixon and paragraph 8 to Mr. Floyd.

22         I am instructing you to mark through and blot out

23    paragraph 7 that names Mr. Dixon.  It is not necessary for you

24    to make a finding about Mr. Dixon there.  Count Four of the

25    indictment actually pertains only to Mr. Floyd, so I'm just

1    telling you that paragraph 7 is a mistake, just take it out.

2            Now, in saying that, I'm not making any comments

3    about whether Defendant Floyd is guilty or not guilty.  That's

4    a matter just for you to decide, it has nothing to do with me.

5            All right.  Now, you have asked some questions and,

6    Mr. Hines, I think this note is from you about explaining about

7    the conspiracy in Count One?

8            THE FOREPERSON:  Yeah, it's one other.

9            THE COURT:  All right.  Count One is the so-called

10   Hobbs Act charge.

11           And with respect to Count One, you're instructed that

12   both defendants are charged in Count One with conspiring to rob

13   a person who they believed to be engaged in narcotics

14   trafficking.  Title 18 U.S. Code, Section 1951, that's the

15   Hobbs Act, makes it a separate federal crime for anyone to

16   conspire or agree with someone else to obtain or take the

17   property of another by robbery and, in so doing, to obstruct,

18   delay, or affect commerce or the movement of articles of

19   commerce.

20           A conspiracy is an agreement by two or more people to

21   commit an unlawful act.  It's a kind of partnership in criminal

22   purposes.  Each member of a conspiracy becomes the agent or

23   partner of every other member.

24           The government does not have to prove that all of the

25   people named in the indictment were members of the plan or that

1    those who were members made any kind of in -- excuse me, made

2    any kind of formal agreement.  The government does not have to

3    prove that the members planned together all of the details of

4    the plan.  The heart of a conspiracy is the making of the

5    unlawful plan itself, so the government does not have to prove

6    that the conspirators succeeded in carrying out the plan.

7           A defendant can be found guilty of that offense as

8    charged in Count One only if the following facts are proved

9    beyond a reasonable doubt:  First, that two or more individuals

10   in some way agreed to commit a robbery encompassed by the Hobbs

11   Act; secondly, that the defendant knew the goal of the

12   conspiracy, that is, the robbery; third, that the defendant

13   willfully participated in helping to accomplish the goal.

14          Factual impossibility is not a defense to conspiracy

15   under the Hobbs Act.  The essence of the conspiracy charge is

16   the agreement itself.  Therefore, the fact that it may have

17   been factually impossible for the conspirators to achieve their

18   goal is not a defense to the conspiracy charge alleged in this

19   case.

20          A person may be a conspirator without knowing all the

21   details of the unlawful plan or the names and identities of all

22   the other alleged conspirators.

23          If a defendant played only a minor part in the plan

24   but had a general understanding of the unlawful purpose of the

25   plan, and willfully joined in the plan on at least one

1    occasion, that's enough for you to find that defendant guilty.

2    But simply being present at the scene of an event or merely

3    associating with certain people and discussing common goals and

4    interests doesn't establish proof of a conspiracy.

5          A person who doesn't know about a conspiracy but who

6    happens to act in a way that advances some purpose of one,

7    doesn't automatically become a conspirator.

8          As I said before, the first element you must find is

9    that two or more persons in some way agreed to commit a robbery

10   encompassed within the Hobbs Act.

11         If two or more persons in some way agreed to commit a

12   robbery as defined by the Hobbs Act, that means the persons

13   agreed to:  First, acquire someone else's property; second, to

14   take the property against the victim's will but using actual or

15   threatened force or violence, or causing the victim to fear

16   harm, either immediately or in the future; third, that the

17   object of the conspiracy, that is, the robbery, had the

18   potential to obstruct, delay, or affect interstate commerce.

19         Interstate commerce is the flow of business

20   activities between one state and anywhere outside that state.

21   It's enough for the government to show that had the

22   conspiratorial objective been accomplished, interstate commerce

23   would have been affected.  That is, the government does not

24   need to prove an actual effect on interstate commerce.

25   Instead, the government need only prove that the objective of

1   the conspiracy, if carried out, had the potential to affect

2   interstate commerce.  Moreover, it's enough if you decide that

3   there would be any effect on interstate commerce.  The effect

4   can be minimal.

5          The word "property" includes money, tangible things

6   of value, and intangible rights that are a source of or element

7   of income or wealth.

8          "Fear" means a state of anxious concern, alarm, or

9   anticipation of harm.  It includes the fear of financial loss,

10  as well as fear of physical violence.

11         You also wanted me to go over the definition of

12  entrapment again.

13         Entrapment occurs when law enforcement officers or

14  others under their direction persuade a defendant to commit a

15  crime that the defendant had no previous intent to commit.

16         The defendant has claimed to be a victim -- the

17  defendants have claimed to be a victim of entrapment.

18         The law forbids convicting an entrapped defendant.

19  But there is no entrapment when a defendant is willing to break

20  the law and the government merely provides what appears to be a

21  favorable opportunity for the defendant to commit a crime.

22         For example, it isn't entrapment for a government

23  agent to pretend to be someone else and offer, directly or

24  through another person, to engage in an unlawful transaction.

25         So a defendant isn't a victim of entrapment if you

1    find beyond a reasonable doubt that the government only offered

2    the defendant an opportunity to commit a crime the defendant

3    was already willing to commit.

4            But if there is a reasonable doubt as to whether a

5    defendant was willing to commit the crime without the

6    persuasion of a government officer or a person under the

7    government's direction, then you must find the defendant not

8    guilty.

9            I think I may have answered all of your questions,

10   either directly or indirectly.  You all go back into the jury

11   room and if I did not answer all your questions would you let

12   me know?

13           THE FOREPERSON:  Yes, ma'am.

14           (Jury retired from the courtroom at 10:20 a.m.)

15           THE COURT:  Are there any exceptions to the charge?

16           MR. SCARBOROUGH:  None as to Mr. Dixon.

17           MR. SECRET:  No, Your Honor.

18           THE COURT:  Does the government have any objections?

19           MS. WEBB:  Yes, Your Honor.  The government objects

20   to there being a directed verdict as to Mr. Dixon on Count

21   Four.  That's all.

22           THE COURT:  What is the government's theory, by the

23   way, on Count Four?

24           MS. WEBB:  It's an aiding and abetting theory.  If

25   you look at the very end of the count, Your Honor, it says in

1   violation of 18 U.S.C., 922(g) and Section 2.  Section 2 is the
2   general aiding and abetting.
3           THE COURT:  I understand that but how would aiding
4   and abetting make Mr. Dixon guilty on Count Four?
5           MS. WEBB:  If he was the source of the firearms,
6   which the government put up evidence to show that he was, if he
7   was the source of the firearms, then he aided and abetted
8   Mr. Floyd in being in possession of the firearms where
9   Mr. Floyd had previously been convicted of a felony.
10          THE COURT:  But the essence of Count Four is that
11  Mr. Floyd had a prior felony conviction for burglary and theft
12  by taking.  That's something that's unique and personal to
13  Mr. Floyd.
14          MS. WEBB:  That's true, Your Honor, and the argument
15  would be --
16          THE COURT:  Do you all have any authority that backs
17  up what you've done on Count Four?  I realize I may be asking
18  the wrong AUSA but I'm skeptical that there is any authority
19  that would make this a legitimate count as regards Mr. Dixon.
20          MS. WEBB:  Off the top of my head I don't know what
21  the case law says about Count Four as to Mr. Dixon but the
22  theory is that if Mr. Dixon knew that Mr. Floyd was a convicted
23  felon and if he nonetheless provided him with firearms, then he
24  would have aided and abetted Mr. Floyd in Count Four.
25          THE COURT:  All right.  Okay, well, we'll be in

1    recess until further order.  You all stand by or let Ms. Hanna

2    know where we can reach you.

3              (Jury deliberations continued; following proceedings

4    outside the presence of the jury at 12:25 p.m.)

5              THE COURT:  Okay, we have two notes from the jury.

6              The first one says:  "Dear, Judge, if the jury

7    doesn't reach a deliberation, is it possible that an alternate

8    replace me?  My mother is in hospice care at this time."

9    Signed Vivian Westry, I believe it is.

10             And then the second note:  "Can you explain Count

11   Three?"

12             What about Ms. Westry?  What do you all have to say?

13             MS. WEBB:  Your Honor, I think we're all in agreement

14   that we can't tell enough from that note to know what the right

15   course of action is and so we were thinking that the Court

16   could bring Ms. Westry out by herself and just try to get some

17   more information as to whether what she's saying is she can't

18   focus and deliberate because she's concerned with her mother,

19   or whether she's saying she's just worried it's going to take

20   too long.  So maybe some questions along those lines to figure

21   out what her question is really targeted towards would then

22   allow us to come to a recommendation about how to handle the

23   situation.

24             MR. SCARBOROUGH:  We agree, Your Honor.  Of course,

25   neither side wants to rush the jury and it's just hard to tell

1    what's going on right now.

2            THE COURT:  In response to the note, "Can you explain

3    Count Three," shall I just give the charge again?

4            MR. SECRET:  Yes, Your Honor.

5            MR. SCARBOROUGH:  I think so.

6            MS. WEBB:  Yes, Your Honor, just to reread the whole

7    charge.

8            THE COURT:  Okay, bring Ms. Westry in, please.

9            (Juror Westry enters the courtroom.)

10           THE COURT:  Hi, Ms. Westry, just come and have a seat

11   right there in the jury box there, in that first chair.  I have

12   read over your note and I've talked to counsel about it and we

13   just have a couple of questions for you.

14           THE JUROR:  Yes, ma'am.

15           THE COURT:  Has your mother just been admitted to the

16   hospice?

17           THE JUROR:  No.  She's been in hospice for two weeks.

18           THE COURT:  Okay.  Is there -- I don't know how to

19   ask this delicately.  Is there something going on that makes

20   you just feel like you really need to be there right now?

21           THE JUROR:  Yes, ma'am, I do.

22           THE COURT:  Okay.  Are you telling us that you're

23   just -- the situation with your mother is such that it's hard

24   for you to concentrate?

25           THE JUROR:  To a degree it is.  I mean, I'm trying to

1    do what's best for the law, you know, and represent, but it's,

2    right now it's kind of like a downfall, my mother's going down.

3              THE COURT:  Okay.  Counsel, do you all have any other

4    questions you'd like to ask?

5              MR. SCARBOROUGH:  No thank you, Your Honor.

6              MR. SECRET:  No, Your Honor.

7              MS. WEBB:  No, Your Honor.

8              THE COURT:  Step back into the jury room and we'll

9    let you know something in just a minute.

10             THE JUROR:  All right, thank you.

11             (Juror Westry retires from the courtroom.)

12             THE COURT:  I think we should let her go.  And we do

13   have alternates, that's what they're for.

14             MS. WEBB:  The government does not have an objection

15   to that.

16             MR. SCARBOROUGH:  If we could just take a moment,

17   Your Honor.

18             (Pause in the proceedings.)

19             MR. SCARBOROUGH:  No objection as to Mr. Dixon.

20             MR. SECRET:  No objection, Your Honor.

21             THE COURT:  All right.  Would you bring Ms. Westry

22   back into the courtroom?  And tell her to make sure she has all

23   of her belongings with her.

24             (Juror Westry enters the courtroom.)

25             THE COURT:  Ms. Westry, before you leave we just want

1 to thank you so much for being willing to serve on our jury.  I

2 noticed you did pay very close attention during the trial and

3 we are sorry that you can't stay with us but we certainly

4 understand your situation.  So thank you so much.

5    THE JUROR:  And I appreciate the Court.

6    THE COURT:  And you can go on out the back door.

7 Thank you.

8    (Juror Westry retires from the courtroom.)

9    THE COURT:  Please be seated.  Okay, I'm going to

10 give a recharge on Count Three but it is 12:30 and it might --

11 we didn't give the jury a break this morning.

12    MS. WEBB:  We were just going to say maybe to wait to

13 do the recharge until after lunch and when the alternate can be

14 here so that the full 12, so the alternate will also hear the

15 recharge because they have to start over with the

16 deliberations.

17    THE COURT:  Well, we don't have to have 12.  We can

18 take a verdict from 11.

19    I'll tell you, let's do this.  Would you tell the

20 members of the jury they should go ahead and take a lunch break

21 until 1:15 and when everybody is back in the jury room they can

22 continue their deliberations but not until then.  Remind them

23 not to discuss the case during the lunch break.  Thank you.

24    Any exceptions to the charge?

25    MR. SCARBOROUGH:  No, Your Honor.

1              MR. SECRET:  No -- what charge?

2              MR. SCARBOROUGH:  Pardon me, do you mean to your

3     resolution of that last matter?

4              THE COURT:  Well, either one.  But I was asking you

5     if you had any objection to -- and I said charge, I shouldn't

6     have -- the instructions that I just gave to the marshal.

7              MR. SCARBOROUGH:  I'm sorry, I didn't hear them.

8              THE COURT:  Never mind.  I did understand or I sensed

9     that you didn't necessarily agree with my announcement that we

10    can take a verdict from 11.

11             MR. SECRET:  If we could confer on that for a second,

12    Your Honor.

13             THE COURT:  That's fine.  You can do it over the

14    lunch break.

15             MR. SECRET:  Yes, Your Honor, thank you.

16             THE COURT:  And I think that's it.  We'll be in

17    recess until 1:15.

18             (Luncheon recess, 12:35 p.m. to 1:25 p.m.)

19             THE COURT:  Bring the jury in, please.

20             (Jury returned to the courtroom.)

21             THE COURT:  Please be seated.

22             Members of the jury, before we took the lunch break

23    you all asked me, your note said:  "Can you explain Count

24    Three?"  I'm prepared to go over again the legal instruction on

25    Count Three, that's what I think you want me to do.  I see

1    heads nodding.

2              All right, with respect to Count Three you are

3    instructed as follows.

4              In Count Three of the indictment, both defendants are

5    charged with conspiring to possess with intent to distribute

6    five kilograms of cocaine.

7              It's a separate federal crime for anyone to conspire

8    to knowingly possess with intent to distribute cocaine.

9              A conspiracy is an agreement by two or more persons

10   to commit an unlawful act.  In other words, it's a kind of

11   partnership in criminal purposes.  Each member of the

12   conspiracy becomes the agent or partner of every other member.

13             The government does not have to prove that all of the

14   people named in the indictment were members of the plan or that

15   those who were members made any kind of formal agreement.  The

16   heart of a conspiracy is the making of the unlawful plan

17   itself, so the government does not have to prove that the

18   conspirators succeeded in carrying out the plan.

19             A defendant can be found guilty only if all of the

20   following elements are proven beyond a reasonable doubt:

21   First, that two or more people in some way agreed to try to

22   accomplish a shared and unlawful plan to possess cocaine as

23   charged in the indictment; secondly, that the defendant in

24   question knew the unlawful purpose of the plan and willfully

25   joined in it; and, third, the object of the unlawful plan was

1   to possess with the intent to distribute more than five

2   kilograms of a mixture or substance containing cocaine.

3           The fact that it was not possible for the

4   conspirators to accomplish the object of the conspiracy is not

5   a defense to the conspiracy charge.

6           A person may be a conspirator even without knowing

7   all the details of the unlawful plan or the names and

8   identities of all the other alleged conspirators.

9           If the defendant in question played only a minor part

10  in the plan but had a general understanding of the unlawful

11  purpose of the plan, and willfully joined in the plan on at

12  least one occasion, that's enough for you to find the defendant

13  guilty.

14          But simply being present at the scene of an event or

15  merely associating with certain people and discussing common

16  goals and interests doesn't establish proof of a conspiracy.

17  Also, a person who doesn't know about a conspiracy but who

18  happens to act in a way that advances some purpose of one,

19  doesn't automatically become a conspirator.

20          Why don't you all go ahead and retire and see if that

21  resolves your questions.  Thank you.

22          (Jury retired from the courtroom at 1:28 p.m.)

23          THE COURT:  Please have a seat.  Any exceptions to

24  the recharge?

25          MR. SCARBOROUGH:  No, Your Honor.

1          MR. SECRET:  No, Your Honor.

2          MS. WEBB:  No, Your Honor.

3          THE COURT:  Okay.  Now let's go back, you all wanted

4    to confer about the matter of proceeding with only 11 jurors in

5    the case.  Does anybody want to be heard on that?

6          MR. SECRET:  Your Honor, we have conferred and

7    decided that we would go with 11.

8          MR. SCARBOROUGH:  That's correct.

9          THE COURT:  I didn't understand.

10         MR. SECRET:  We will go with 11, Judge.

11         THE COURT:  Okay.  Well, I believe that's

12   specifically provided for in the rules.

13         MR. SECRET:  I believe Your Honor can do it.

14         THE COURT:  And the only other thing, I guess, the

15   rule does say that I'm supposed to, if it's the fact, make a

16   determination that good cause exists for proceeding with just

17   11.

18         And I think good cause does exist in this case, in

19   that the juror, Ms. Westry, indicated not only that her mother

20   is in a hospice but she's going downhill real fast and she

21   feels a need to be with her, which I think is good cause.

22         Now, we do have alternates but here's the thing.  If

23   we were to bring in an alternate at this point the jury would

24   be required to start its deliberations over again and I'm just

25   reluctant to do that at this point.  So if we lose anybody else

1    we'll think about it again but that's where we stand at this

2    point.  All right, we'll be in recess until further order.

3              (Jury deliberations continued; following proceedings

4    outside the presence of the jury at 1:50 p.m.)

5              THE COURT:  I understand we have a verdict.  Bring

6    the jury in.

7              THE COURT SECURITY OFFICER:  Yes, Your Honor.

8              (Jury returned to the courtroom.)

9              THE COURT:  Please be seated.

10             Mr. Hines, has the jury reached a verdict in this

11   case?

12             THE FOREPERSON:  Yes, we have.

13             THE COURT:  Would you hand the verdict form to the

14   court security officer, please?

15             Would you publish the verdict, please?

16             THE COURTROOM DEPUTY:  In the United States District

17   Court for the Northern District of Georgia, Atlanta Division,

18   in the case of the United States of America versus Woodrow

19   Rudolph Dixon, Jr., also known as Dro, and Kirk Floyd, also

20   known as Twin, Criminal Action No. 1:12-CR-205-ODE Superseding,

21   Count One, Hobbs Act conspiracy:  As to Count One of the

22   superseding indictment, we, the jury, find Defendant Woodrow

23   Rudolph Dixon, Jr., guilty.  As to Count One of the superseding

24   indictment we find Defendant Kirk L. Floyd guilty.

25             Count Two, carrying a firearm during or in relation

1    to a crime of violence, 3A, as to Count Two of the superseding

2    indictment, we, the jury, find Defendant Woodrow Rudolph Dixon,

3    Jr. guilty.

4            Having found Defendant Woodrow Rudolph Dixon, Jr.

5    guilty, we, the jury, find beyond a reasonable doubt as the

6    following:  Yes, the defendant or someone he aided and abetted

7    carried the Mossberg shotgun.  Yes, the Mossberg shotgun had a

8    barrel less than 18 inches.  2, yes, the defendant or someone

9    he aided and abetted carried the Ruger .44 Magnum revolver.

10   No, the defendant or someone he aided and abetted carried the

11   Glock .40 caliber handgun.

12           As to Count Two of the superseding indictment, we,

13   the jury, find Defendant Kirk L. Floyd guilty.

14           Having found Defendant Kirk L. Floyd guilty, we, the

15   jury, find beyond a reasonable doubt as follows:  Yes, the

16   defendant or someone he aided and abetted carried the Mossberg

17   shotgun.  Yes, the Mossberg shotgun had a barrel less than 18

18   inches.  Yes, the defendant or someone he aided and abetted

19   carried the Ruger .44 Magnum revolver.  No, the defendant or

20   someone he aided and abetted carried the Glock .40 caliber

21   handgun.

22           Count Three, conspiracy to possess a controlled

23   substance with intent to distribute.  As to Count Three of the

24   superseding indictment, we, the jury, unanimously find

25   Defendant Woodrow Rudolph Dixon, Jr. guilty.  As to Count Three

1    of the superseding indictment, we, the jury, unanimously find

2    Defendant Kirk L. Floyd guilty.

3              Count Four, as to Count Four of the superseding

4    indictment, we, the jury, unanimously find Defendant Kirk L.

5    Floyd guilty.

6              So say we all, signed and dated at the United States

7    Courthouse, Atlanta, Georgia this 25th day of November, Ronald

8    Eugene Hines, Foreperson, November 25th, 2013.

9              THE COURT:  Counsel, is there anything further before

10   the jury is excused?

11             MR. SCARBOROUGH:  Would the Court poll the jury,

12   please?

13             THE COURT:  Yes, we will.

14             THE COURTROOM DEPUTY:  Members of the jury, as I call

15   your name please stand and answer the following questions.

16                       POLLING OF THE JURY

17   BY THE COURTROOM DEPUTY:

18   Q.   Raymond Douglas, was the verdict as published your

19   verdict?

20   A.   Yes.

21   Q.   Is it now your verdict?

22   A.   Yes.

23   Q.   Was the verdict freely and voluntarily entered into by

24   you?

25   A.   Yes.

1    Q.    Thank you.

2          Charlene Pryor, was the verdict as published your

3    verdict?

4    A.    Yes.

5    Q.    Is it now your verdict?

6    A.    Yes.

7    Q.    Was the verdict freely and voluntarily entered into by

8    you?

9    A.    Yes.

10   Q.    Thank you.

11         Ronald Eugene Hines, was the verdict as published

12   your verdict?

13   A.    Yes.

14   Q.    Is it now your verdict?

15   A.    Yes.

16   Q.    Was the verdict freely and voluntarily entered into by

17   you?

18   A.    Yes.

19   Q.    Thank you.

20         Twana Griffith, was the verdict as published your

21   verdict?

22   A.    Yes.

23   Q.    Is it now your verdict?

24   A.    Yes.

25   Q.    Was the verdict freely and voluntarily entered into by

1    you?

2    A.   Yes.

3    Q.   Thank you.

4           Stephen York, was the verdict as published your

5    verdict?

6    A.   Yes.

7    Q.   Is it now your verdict?

8    A.   Yes.

9    Q.   Was the verdict freely and voluntarily entered into by

10   you?

11   A.   Yes.

12   Q.   Thank you.

13          Janice Byers, was the verdict as published your

14   verdict?

15   A.   Yes.

16   Q.   Is it now your verdict?

17   A.   Yes.

18   Q.   Was the verdict freely and voluntarily entered into by

19   you?

20   A.   Yes.

21   Q.   Thank you.

22          Nancy Smith, was the verdict as published your

23   verdict?

24   A.   Yes.

25   Q.   Is it now your verdict?

1    A.    Yes.

2    Q.    Was the verdict freely and voluntarily entered into by

3    you?

4    A.    Yes.

5    Q.    Thank you.

6           Liscolotte Betz, was the verdict as published your

7    verdict?

8    A.    Yes.

9    Q.    Is it now your verdict?

10   A.    Yes.

11   Q.    Was the verdict freely and voluntarily entered into by

12   you?

13   A.    Yes.

14   Q.    Thank you.

15          Patricia McCullough, was the verdict as published

16   your verdict?

17   A.    Yes.

18   Q.    Is it now your verdict?

19   A.    Yes.

20   Q.    Was the verdict freely and voluntarily entered into by

21   you?

22   A.    Yes.

23   Q.    Thank you.

24          Jeffery Shannon, was the verdict as published your

25   verdict?

 1    A.    Yes.

 2    Q.    Is it now your verdict?

 3    A.    Yes.

 4    Q.    Was the verdict freely and voluntarily entered into by

 5    you?

 6    A.    Yes.

 7    Q.    Thank you.

 8          Bilal Nasir, was the verdict as published your

 9    verdict?

10    A.    Yes.

11    Q.    Is it now your verdict?

12    A.    Yes.

13    Q.    Was the verdict freely and voluntarily entered into by

14    you?

15    A.    Yes.

16    Q.    Thank you.  Have I called everyone's name?

17          THE COURT:  Ladies and gentlemen, I would like to

18    thank all of you who served on our jury in this case.  We know

19    that your time is very valuable.  We know there are a lot of

20    things that you could be doing in your personal lives rather

21    than being here at the courthouse and we are very appreciative

22    of the fact that you were willing to come down and serve on the

23    jury and help us with this case.  I thought you all paid very

24    close attention throughout the trial and it's been a pleasure

25    having all of you in my courtroom.

1          Sometimes when a case is over counsel or others like

2    to speak to members of the jury about the case.  Now, at this

3    point the case is over and if you wish to discuss it with

4    someone else it's your right to do that.  Of course, it's also

5    your right not to do it if you just don't want to.

6          I do counsel you, however, if you decide to discuss

7    the case with one of the lawyers or anybody else, express only

8    your own views on a particular aspect of the case.  Don't

9    relate anything that anybody else said in the jury room.

10          All right, you all are excused.  I hope you have a

11    nice Thanksgiving and go by the jury assembly room to tell them

12    you're through with this case.  Thank you.

13          (Jury retired from the courtroom at 2:00 p.m.)

14          THE COURT:  Please be seated.  All right, I don't

15    think we have anything else for today.  We do have another

16    hearing starting in just a couple of minutes so I'm going to

17    take a very short break and if you all could get your stuff off

18    the tables quickly I would appreciate it.  Thank you.

19          (Proceedings concluded at 2:00 p.m.)

20

21

22

23

24

25

742

1                          C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT:

4    NORTHERN DISTRICT OF GEORGIA:

5

6              I hereby certify that the foregoing pages, 713

7    through 741, are a true and correct copy of the proceedings in

8    the case aforesaid.

9              This the 9th day of January, 2014.

10

11
                        /s/ Amanda Lohnaas
12                      _____
                        Amanda Lohnaas, CCR-B-580, RMR, CRR
13                      Official Court Reporter
                        United States District Court
14

15

16

17

18

19

20

21

22

23

24

25